[No. 7374. Decided August 6, 1908.]

THE STATE OF WASHINGTON, *on the Relation of A. C. Flumerfelt et al., Respondents,* v. ABRAHAM W. ENGLE, *as State Examiner of Banks, Appellant.*[1]

BANKS AND BANKING—BRANCH BANKS—STATUTES—CONSTRUCTION. Under Laws 1907, p. 518, defining "branch banks" to mean any branch established at a city or town other than that in which the principal office is located, and defining "bank" to include foreign banks transacting banking business in this state, the term "branch banks" is not to be confined to branches of foreign banks only; but a domestic bank is authorized to establish branches, especially in view of other sections enumerating the powers of "any corporation, branch bank or foreign bank," etc.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 11, 1908, granting a writ of mandate to compel the filing of articles of a banking corporation. Affirmed.

*The Attorney General* and *E. C. Macdonald, Assistant (J. B. Alexander* and *I. B. Knickerbocker, Assistants,* of counsel), for appellant.

*Graves, Kizer & Graves,* for respondents.

CROW, J.—In this action an application was made to the superior court of Spokane county by A. C. Flumerfelt, H. N. Galer, and D. M. Rogers as relators, for a writ of man-

[1]Reported in 96 Pac. 1045.

damus commanding Abraham W. Engle, state examiner of banks, to receive and file articles of incorporation of the British-American bank. In their affidavit the relators alleged, that they had executed articles of incorporation in quadruplicate; that they had filed one copy with the auditor of Spokane county; one copy with the secretary of state who had issued a license; that one copy was retained by the proposed corporation, and that they had tendered one copy to the defendant for filing; but that he had refused, and still refuses, to receive or file the same, for the sole reason that the proposed corporation, by its articles, assumed the power to establish branch banks, and that, under the banking laws of this state, no domestic corporation is authorized to exercise any such power. A copy of the articles set forth in the affidavit shows that the principal place of business of the corporation is to be in the city of Spokane, and also states that:

"The nature of the business of such corporation shall be to carry on a general commercial banking business, with a department for the transaction of a savings bank business, also to establish branch banks which may conduct both departments of banking business, in other cities or towns than Spokane."

To this affidavit the defendant interposed a general demurrer, which was overruled by the trial judge. Thereupon the defendant elected to stand upon his demurrer, and final judgment was entered awarding a peremptory writ of mandamus. The defendant has appealed.

The contention of appellant is, that the British-American bank, having fixed its principal place of business in the city of Spokane, has no power to establish branch banks at any other point in the state, and that he, as state examiner, is not authorized to accept or file its articles of incorporation containing an assumption of any such power. The banking act (Laws of 1907, p. 518, ch. 225) creates the office of state examiner of banks, and provides for the formation, regulation, and examination of certain banks. The appellant con-

tends that this act is intended to be comprehensive and cover the entire subject-matter of the organization and control of incorporated banks in this state, but that it does not authorize branch banks to be conducted by domestic banks organized under its provisions. The words "branch banks" appear in §§ 6, 7, and 14. The appellant contends that these words as used must be construed as referring exclusively to branches of foreign banks, while the respondent contends that they refer to branches of domestic banks only. In § 6 we find the following definition:

"The term 'branch bank,' used in this act, shall be taken to mean a branch established in a town or city other than that in which its principal office is located."

This definition gives to the term "branch bank" a uniform meaning throughout the entire act. To consistently hold that it refers to branches of foreign banks only, we would be compelled to so construe it whenever used. This we cannot do, as its subsequent use negatives any such interpretation. If the legislature had intended to apply the term "branch banks" to branches of foreign banks only, it would have so stated in its definition. Again, the term "bank," as used and previously defined in § 6, specifically includes foreign banks transacting banking business in this state. This definition reads as follows:

"The term 'bank,' used in this act, shall be taken to mean and include every corporation, domestic or foreign (except national banks and foreign banks not authorized to receive deposits), transacting banking business in this state."

This definition of the word "bank," which includes foreign banks transacting business in this state, simplifies the meaning of the statutory definition of "branch bank," above referred to, and makes it apparent that the term "branch banks" refers to branches of domestic corporations. But even if the legislature had not enacted separate statutory definitions of the terms "bank" and "branch bank," yet, in view of other

provisions of the act, the term "branch bank" could not be construed as applying to branches of foreign banks, when used in § 14 or in any other section. Section 7 mentions the term "branch banks" three separate times in the following manner:

"Any corporation, branch bank *or foreign bank,* who shall receive money on deposit . . . every such corporation, branch bank, *or foreign bank* receiving deposits . . . existing banks, branch banks, *and foreign banks* receiving deposits."

Section 14 again refers to branch banks in substantially the same manner. A careful reading of these sections in which the term "branch banks" is used shows that any attempt to limit its use to foreign banks would deprive it of any meaning whatsoever. The statutory use of the terms "branch banks," and "foreign banks" makes it necessary to hold that the term "branch banks" can only refer to branches of domestic banking corporations, while the term "foreign banks" refers to branches in this state of foreign banking corporations. The act clearly contemplates that branches of domestic banks may be established and exist in this state.

Some questions have been raised as to the management and required capital stock of branch banks of domestic banks, if held to be authorized. We do not think any such questions are now before us, as they are not necessarily involved in the issues in this proceeding, and we shall refrain from their discussion.

The demurrer to the relator's affidavit was properly overruled. The judgment is affirmed.

FULLERTON, ROOT, and DUNBAR, JJ., concur.

HADLEY, C. J., and MOUNT, J., took no part.